IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DELBERT MOSS, | ) |
| Petitioner, | ) |
| v. | ) C.A. NO. 05-143 ERIE |
| SUPT. WILSON, | ) |
| Respondent, | ) |

## COMMONWEALTH'S ANSWER TO PETITION FOR WRIT OF HABEAS CORPUS

AND NOW, comes the Commonwealth of Pennsylvania, by and through its representative Michael E. Burns, Assistant District Attorney, Erie County, Pennsylvania, and files the within Answer to Petition for Writ of Habeas Corpus and in support therof avers as follows:

**I.    PROCEDURAL HISTORY**

The petitioner, Delbert Moss, was convicted on July 19, 1999 after a jury trial in the Court of Common Pleas of Erie County, Pennsylvania of: one (1) count of Aggravated Assault [18 Pa.C.S.A. §2702(a)(1,4)], two (2) counts of Terroristic Threats [18 Pa.C.S.A. §2706], one (1) count of Attempted Criminal Homicide [18 Pa.C.S.A. §901/2501], one (1) count of Recklessly Endangering Another Person [18 Pa.C.S.A. §2705], and one (1) count of Carrying a Firearm Without a License [18 Pa.C.S.A. §6106(a)].

On August 23, 1999, the Honorable John A. Bozza, of the Court of Common Pleas, sentenced the petitioner to an aggregate sentence of ten (10) to twenty (20) years incarceration on all counts. The Commonwealth filed a Motion for Restitution which

was granted. Defense counsel was served with a copy of the Motion for Restitution, and after argument, the court ordered restitution on September 13, 1999.

Petitioner took a direct appeal to the Pennsylvania Superior Court (Docket Number 1688 WDA 1999) from his conviction. In that appeal, the only issue raised was the alleged failure of the trial court to ask follow-up questions to prospective jurors during voir dire concerning their view of the testimony of police officers. On April 14, 2000, the Superior Court affirmed the lower Court's Judgment of Sentence and on September 5, 2000, the Pennsylvania Supreme Court denied petitioner's petition for allowance of appeal.

On May 24, 2001, the petitioner filed a Motion for Post Conviction Collateral Relief. Appointed counsel petitioned to withdraw and filed a no merit <u>Finley</u> letter. Counsel was permitted to withdraw and on October 31, 2001, the PCRA court denied the motion. In petitioner's Motion for Post Conviction Collateral Relief, he argued that trial counsel was ineffective for not raising the defense that the petitioner was intoxicated at the time of the crimes in question. He also challenged the propriety of the trial court entertaining the Commonwealth's Motion for Restitution and finally argued that he should have been granted a mistrial because of an improper comment made by one of the jurors during a recess.

The petitioner appealed this denial, and on November 26, 2002, the Pennsylvania Superior Court affirmed the PCRA Court's denial (Docket Number 2040 WDA 2001). The only issue raised by the petitioner on appeal was whether there was insufficient evidence to sustain the aggravated assault and attempted homicide counts. The petitioner did not appeal to the Supreme Court of Pennsylvania.

On May 19, 2005, the petitioner filed the instant Petition for Writ of Federal Habeas Corpus. This answer follows.

## II. COGNIZABLE CLAIMS IN FEDERAL HABEAS CORPUS PROCEEDINGS

A state prisoner may seek federal habeas relief only if he is in custody in violation of the United States Constitution or federal law. 28 U.S.C. §2254(a); Smith v. Phillips, 455 U.S. 209 (1982); Geschwendt v. Ryan, 967 F.2d 877 (3d Cir. 1992), cert. denied, 506 U.S. 977 (1992); Zettlemoyer v. Fulcomer, 923 F.2d 284 (3d Cir. 1991), cert. denied, 502 U.S. 902 (1991). Violations of state law or procedural rules alone are not sufficient; a petitioner must allege a deprivation of federal rights before federal habeas relief may be granted. Engle v. Isaac, 456 U.S. 107 (1982); Wells v. Petsock, 941 F.2d 257 (3d Cir. 1991), cert. denied, 505 U.S. 1223 (1992). A federal court's scope of review is limited as its role is not to retry state cases *de novo*, but to examine the proceedings in the state court to determine if there has been a violation of constitutional standards. Barefoot v. Estelle, 463 U.S. 880 (1983); Milton v. Wainwright, 407 U.S. 371 (1972). A habeas petitioner must show that the state court's decision was such a gross abuse of discretion that it was unconstitutional; "ordinary" error is outside the scope of §2254.

## III. STATUTE OF LIMITATIONS

Pursuant to the Anti-terrorism and Effective Death Penalty Act of 1996, ("AEDPA"), effective April 24, 1996, the statute of limitations for filing a petition for writ of habeas corpus is as follows:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking

> such review;
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C.A. §2244(d).

The petitioner's state court review was final on December 26, 2002, at the expiration of his thirty-day time period for seeking review with the Pennsylvania Supreme Court. Pa. R.App.P. 1113(a). Under 28 U.S.C.A. §2244(d), the petitioners last day to file a Habeas Petition was December 26, 2003, one year after the petitioner's state court review became final. Petitioner filed his Petition for Writ of Habeas Corpus nearly one year and five months after the expiration of the applicable statute of limitations. Petitioner does not allege that any exceptions to the one year limitation period apply. Therefore, the petition must be dismissed as untimely. LaCava v. Kyler, 398 F.3d 271 (3rd Cir. 2005).

IV.   **EXHAUSTION**

Before a federal court may address the merits of a state prisoner's claim, constitutional and federal law issues must have been fairly presented to the state courts - first through direct appeal, collateral review, or other available procedures for judicial review. See e.g., Castille v. Peoples, 489 U.S. 346, 351 (1989); Picard v. Connor, 404

4

U.S. 270, 275 (1971); Doctor v. Walters, 96 F.2d 675, 678 (3d Cir. 1996); Burkett v. Love, 89 F.3d 135, 137 (3d Cir. 1996). A state prisoner is required by 28 U.S.C. §2254(b) to exhaust all available state court remedies before seeking federal relief. The exhaustion requirement is based upon the principle of comity, which requires that state courts be given the first opportunity to address and correct constitutional violations and errors committed in their courts. Rose v. Lundy, 455 U.S. 509, 518 (1982); Preiser v. Rodriguez, 411 U.S. 475, 491 (1973). Generally, in order to satisfy the exhaustion requirement, "a state prisoner seeking federal habeas relief must present each of his claims to the state's highest court." Story v. Kindt, 26 F.3d 402, 409 (3d Cir. 1994); see also, Wojtczak v. Fulcomer, 800 F.2d 353 (3d Cir. 1986). The petitioner has the burden of establishing that exhaustion has been met. Ross v. Petsock, 868 F.2d 639 (3d Cir. 1989); O'Halloran v. Ryan, 835 F.2d 506, 508 (3d Cir. 1987).

Exhaustion is not a jurisdictional limitation, however, and federal courts may review the merits of a state claim when no appropriate remedy exists. Christy v. Horn, 115 F.3d 201, 206 (3d Cir. 1997); Doctor, at 681; Carter v. Vaughn, 62 F.2d 591, 594 (3d Cir. 1995) (citation omitted). A state prisoner shall not be deemed to have exhausted state remedies if he has the right to raise his claims by any available state procedure. 28 U.S.C. §2254(c). Federal courts may entertain the merits of a petition for habeas corpus where the state remedies have not been exhausted "when no appropriate remedy exists at the state level or when the state process would frustrate the use of an available remedy." Story at 405; Hankins v. Fulcomer, 941 F.2d 246, 249 (3d Cir. 1991). If the "petitioner has no opportunity to obtain redress in state court or where the state corrective process is so defective as to render any effort to obtain relief futile," exhaustion is not required.

5

Case 1:05-cv-00143-MBC-SPB     Document 6     Filed 07/22/2005     Page 6 of 15
Case 1:05-cv-00143-MBC-SPB     Document 5     Filed 07/22/2005     Page 6 of 16

Gibson v. Scheidemantel, 805 F.2d 135, 138 (3d Cir. 1986) (citing Duckworth v. Serrano, 454 U.S. 1, 3 (1981)); see also, Hankins at 249-250 (exhaustion is excused if state process offers no hope of relief).

The initial inquiry in determining whether the exhaustion requirement has been met is whether a state prisoner has "fairly presented" his federal claims to the state courts. To meet the fair presentation criterion, the same factual and legal basis for a claim must be presented to the state court to allow the state a reasonable opportunity to address the claim and correct any violation of federal rights. Duncan v. Henry, 513 U.S. 364 (1995) (per curiam). "Fair presentation requires that, before a particular claim may be asserted in federal court, the same method of analysis must have been made available to the state court." Chaussard v. Fulcomer, 816 F.2d 925, 928 (3d Cir. 1987), cert. denied, 484 U.S. 845 (1987). The exhaustion requirement further requires a state prisoner to properly present his claims to the requisite state courts. A state prisoner must present every claim raised in the federal petition to the state's trial court, intermediate appellate court, and highest court before exhaustion will be satisfied. O'Sullivan v. Boerckel, 526 U.S. 838, 839, 119 S.Ct. 1728, 1730 (1999) ("the state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition"); Orban v. Vaughn, 123 F.2d 727 (3d Cir. 1997), cert. denied, 118 S.Ct. 717 (1998); Doctor at 678; Evans v. Court of Common Pleas, Delaware County, 959 F.2d 1227, 1230 (3d Cir. 1992), cert. denied, 506 U.S. 1089 (1993). Exhaustion does not require that the highest court rule on the merits of a petitioner's claims; it does, however, require that the court be given the opportunity to review them. Bond v. Fulcomer, 864 F.2d 306, 309 (3d Cir. 1989).

The petitioner raised the following claims in his current Federal Habeas Petition:

(1) Whether the trial was fundamentally unfair due to a juror's comment to other jurors about the case?

(2) Whether there was sufficient evidence to support a conviction of attempted homicide?

(3) Whether the trial was fundamentally unfair due to a biased jury?

(4) Whether the Commonwealth violated rules of discovery, causing the trial to be fundamentally unfair?

Only claim number three (3) has been raised at all three appellate levels and therefore is the only claim truly exhausted.

### V.   PROCEDURAL DEFAULT DOCTRINE

Exhaustion may also be satisfied when a petitioner is barred from raising his claims because Pennsylvania courts will no longer entertain them due to waiver or default. Logan v. Vaughn, 890 F.Supp. 427, 430 (E.D. Pa. 1995) (citing Castille at 346). Although defaulted or waived claims meet the technical requirements for exhaustion because no state forum is available, a petitioner may be barred from bringing such claims for federal court review under the "procedural default" doctrine. Gray v. Netherland, 518 U.S. 152 (1996); Coleman v. Thompson, 501 U.S. 722, 732 (1991); Doctor at 678; Sistrunk v. Vaughn, 96 F.3d 666, 678 (3d Cir. 1996). Like the exhaustion requirement, the procedural default doctrine was developed to promote our dual judicial system; it is based upon the "independent and adequate state ground" doctrine, which dictates that federal courts will not review a state court decision involving a question of federal law if the state court decision is based on state law that is "independent" of the federal question and "adequate" to support the judgment. Coleman at 750.

A state's procedural rules are entitled to deference by federal courts and a petitioner's violation of a state procedural rule may constitute an independent and adequate state ground for denial of federal review of a habeas claim. Id.; Sistrunk at 673. In order to prevent federal habeas corpus review under the procedural default doctrine, a state procedural rule must be "consistently and regularly applied." Banks v. Horn, 126 F.3d 206, 211 (3d Cir. 1997) (quoting Johnson v. Mississippi, 486 U.S. 578, 588-89 (1988). Moreover, violations of a state's procedural rules may constitute an independent and adequate state ground sufficient to involve the procedural default doctrine even where no state court has concluded that a petitioner is procedurally barred from raising his claims. Glass v. Vaughn, 65 F.3d 13, 15 (3d Cir. 1995), cert. denied, 116 S.Ct. 1027 (1996); Carter at 595. Federal habeas review is not available to a petitioner whose Constitutional claims have not been addressed on the merits due to procedural default unless a petitioner can demonstrate: 1) cause for the default and actual prejudice as a result of the alleged violation of federal law; or 2) failure to consider the claims will result in a fundamental miscarriage of justice. Coleman at 750; Carter at 595.

The United States Court of Appeals for the Third Circuit directs this Court to review Petitioner's claim to determine whether any ambiguity exists as to whether a petitioner's inaction (i.e., his failure to comply with Pennsylvania procedural rules) constitutes procedural default under Pennsylvania state law. Carter at 595. If ambiguity exists, this Court should dismiss the petition without prejudice for failure to exhaust state remedies. Id. If a petitioner's failure to appeal his claims unambiguously constitutes procedural default under Pennsylvania law, this Court must determine whether cause and

prejudice existed for the default or whether failure to consider a petitioner's claims would result in a fundamental miscarriage of justice. Id.

Here claim number four (4) has been raised for the first time in the appellate process in the instant Federal Habeas petition, and the appellant can no longer raise this issue through direct or PCRA review.[1] Thus, this issue has been procedurally defaulted. Additionally, claim number one (1) was only raised to the PCRA court and the petitioner did not appeal the issue to the Pennsylvania Superior Court or the Pennsylvania Supreme Court. Since this issue can no longer be raised through direct[2] or PCRA review[3] this issue has been procedurally defaulted. Finally, claim number two (2) was only raised to the Pennsylvania Superior Court on an appeal from the Denial of PCRA Petition and the petitioner did not appeal the issue to the Pennsylvania Supreme Court. Since this issue can no longer be raised through direct[4] or PCRA review[5] this issue has been procedurally defaulted.

### A. **Cause and Prejudice**

To satisfy the cause standard, a petitioner must demonstrate that some objective factor external to the defense impeded counsel's efforts to raise the claim in state court. McClesky v. Zant, 499 U.S. 467, 493 (1991); Murray v. Carrier, 477 U.S. 478, 488 (1986). Neither a deliberate strategic decision nor an inadvertent failure of counsel to raise an issue constitutes "cause" unless counsel's performance failed to meet the Sixth

---

[1] Under 42 Pa.C.S.A. §9545(b)(1) a filing of another PCRA would be untimely. This time requirement regarding such a filing has been consistently and regularly enforced by PCRA courts.
[2] Under Pa. R.A.P. 903(a) the filing of an appeal would be untimely. This time requirement regarding such a filing has been consistently and regularly enforced by the Pennsylvania Superior Court.
[3] See Footnote 1.
[4] Under Pa. R.A.P. 1113(a) the filing of an appeal would be untimely. This time requirement regarding such a filing has been consistently and regularly enforced by the Pennsylvania Supreme Court.
[5] See Footnote 1.

9

Amendment standard for competent assistance. Engle v. Isaac, 456 U.S. 107 (1982); Murray at 485-487.

### B. Miscarriage of Justice

If a petitioner cannot demonstrate the necessary "cause" and "prejudice," this Court may review the claims if the petitioner can show that a "fundamental miscarriage of justice would result from a failure to entertain the claim[s]." McClesky at 495. This Court may use its discretion to correct a fundamental miscarriage of justice if it appears that a "constitutional violation probably resulted in the conviction of one who is actually innocent." Murray at 496; see also Coleman at 748; McClesky at 502. Under the "miscarriage of justice" standard, a petitioner must present new evidence of innocence and persuade the district court that, in light of the new evidence, no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt. Schlup v. Delo, 513 U.S. 298 (1995).

As the petitioner has not adequately addressed the cause and prejudice prongs surrounding his failure to exhaust state remedies for claim numbers one (1), two (2), and four (4), nor addressed how this Court's failure to hear those claims would be a fundamental miscarriage of justice, they are not cognizable under this petition.

### VI. MERITS OF PETITIONER'S CLAIM

### A. Juror Misconduct

The Constitution does not require a new trial every time a juror has been placed in a potentially compromising situation because it is virtually impossible to shield jurors from every contact or influence that might theoretically affect their vote. Smith v. Phillips, 455 U.S. 209, 217 (1982). "Due process means a jury capable and willing to

decide the case solely on the evidence before it, and a trial judge ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen." Id.

Here the trial judge's secretary overheard a juror making a comment to the effect that "perhaps counsel was coming into the judge's chamber because the defendant was going to plea." Trial Transcript (Day 2), 6/19/99, p. 125. There were at most five other jurors present when the comment was made. Trial Transcript (Day 2), 6/19/99, p. 126. The trial judge brought the juror into chambers, while both defense counsel and counsel for the Commonwealth were present, to discuss the comment made by the juror. Trial Transcript (Day 2), 7/19/99, p. 127. After being questioned the juror stated he had no fixed opinion of the guilt of the petitioner and he was not trying to discuss the case with the other jurors. Trial Transcript (Day 2), 7/19/99, p. 128. It was only after this private questioning occurred that the court determined the petitioner was not prejudiced. Trial Transcript (Day 2), 7/19/99, p. 125-133.

There is no indication on the record that the jury was unable or unwilling to decide the case solely on the evidence before it. The petitioner was not prejudiced and therefore he is not entitled to relief.

### B. Insufficient Evidence

The Due Process Clause of the Fourteenth Amendment forbids a State to convict a person of a crime without proving the elements of that crime beyond a reasonable doubt. Fiore v. White, 531 U.S. 225, 229 (2001). "A habeas corpus court must make a determination whether there was evidence from which a factfinder could find each element of the offense beyond a reasonable doubt." Singer v. Court of Common Pleas,

Bucks County, 879 F.2d 1203, 1206 (3d Cir. 1989) (citing Jackson v. Virginia, 443 U.S. 307 (1979)).

The petitioner claims there was insufficient evidence to sustain his conviction for Criminal Attempt at Homicide. In order to find a defendant guilty of criminal attempt at homicide, the factfinder must be satisfied beyond a reasonable doubt that the accused, with a specific intent to kill, took a substantial step toward that goal. 18 Pa.C.S.A. § 901/2501. The evidence presented at trial shows that the petitioner entered the victim's bar, walked up to the victim, drew a pistol, pointed it at the victim at very close range, stated that he wanted to shoot the victim, and then proceeded to shoot him in the abdomen. A perusal of the victim's testimony (Trial Transcript (Day 1), 7/16/99, p. 104-109) and the testimony of Mrs. Blumish (Trial Transcript (Day 1), 7/16/99, p. 148-150) should make this abundantly clear. Under any objective review of the facts of this case, there was sufficient evidence to support the conviction of the petitioner.

C.      **Juror Bias**

The United States Supreme Court has always stressed the wide discretion granted to trial courts in conducting voir dire regarding responses to questions that might tend to show juror bias. See Aldridge v. United States, 283 U.S. 308 (1931). In Connors v. United States, 158 U.S. 408 (1895), the Supreme Court stated:

> [A] suitable inquiry is permissible in order to ascertain whether the juror has any bias, opinion, or prejudice that would affect or control the fair determination by him of the issues to be tried. That inquiry is conducted under the supervision of the court, and a great deal must, of necessity, be left to its sound discretion. This is the rule in civil cases, and the same rule must be applied in criminal cases.

In Hamm v. South Carolina, 409 U.S. 524 (1973), the Supreme Court held that the Due Process Clause of the Fourteenth Amendment required the court to ask "either of

12

Case 1:05-cv-00143-MBC-SPB    Document 6    Filed 07/22/2005    Page 13 of 15
Case 1:05-cv-00143-MBC-SPB    Document 5    Filed 07/22/2005    Page 13 of 16

the brief, general questions urged by the petitioner" with respect to race, Id. at 527, but rejected his claim that an inquiry as to prejudice against persons with beards be made, "given the traditionally broad discretion accorded to the trial judge in conducting voir dire . . . ." Id. at 528. In Patton v. Yount, 467 U.S. 1025 (1984), the Supreme Court determined that in federal habeas review, the statutory presumption of correctness of 28 U. S. C. § 2254(d) should attach to a state court's determination that a particular juror could be impartial.

Pursuant to Rule 1107 of the Pennsylvania Rules of Criminal Procedure, prospective jurors are required to complete a juror questionnaire form. Question 9 asks each prospective juror whether they would view the testimony of a police officer as being credible based solely upon their job. During voir dire in petitioner's case, fourteen prospective jurors responded affirmatively to question 9.

In light of these responses, the trial court provided a clarifying instruction as to question 9. The trial court noted:

> One of the questions that is asked is as follows . . . I know, there are lots of you here who said yes, understandably. The question as asked is intended to find out if you would accept the testimony of a police officer more than that of another individual solely because the person is a police officer. In other words, on that basis alone. That is the intention of the question.
> I think the way the question is framed probably gives people the impression they want to know if they think that police officers should be believed because they enforce the laws, which is a little bit different. But the point here is to find out whether someone can be objective in observing officer testimony, police officer testimony, listening to it and then making a decision concerning it. So that's the explanation for that question.

Trial Transcript (Day 1), 7/16/99, p. 18-19.

Following this explanation, the trial court questioned each juror that responded affirmatively to question 9. The majority of those jurors questioned following the trial

court's clarification indicated they would not give police officer's testimony enhanced credibility. Those who expressed concerns were excused for cause following defense motion. Trial Transcript (Day 1), 7/16/99, p. 54-62.

As evidenced by the transcript of record, the trial court justifiably limited voir dire as to question 9. On the basis of the answers provided following the trial court's clarifying instruction, there was no need to allow further inquiry. Any further questions would only have served to allow the petitioner to engage in a fishing expedition through which to move to exclude for cause. As made evident by the record, the trial court questioned jurors to ensure they had no bias, opinion, or prejudice that would affect or control the fair determination by them of the issues to be tried. Furthermore, nothing on the record indicates the jurors were in fact biased. Accordingly, the petitioner's claim his trial was fundamentally unfair and in violation of the Fourteenth Amendment is without merit and relief should be denied.

D.      **Discovery Violations**

Prosecutorial misconduct does not by itself provide grounds for relief. Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974). As the Supreme Court explained in Smith v. Phillips, 455 U.S. 209 (1982), "before a federal court may overturn a conviction resulting from a state trial…it must be established not merely that the [State's action] is undesirable, erroneous, or even "universally condemned," but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." Id. at 221 (quoting Cupp v. Naughten, 414 U.S. 141, 146 (1973)). The petitioner must demonstrate that the prosecutorial misconduct rises to the level of a due process violation because the prosecutorial misconduct affects the fundamental fairness of the entire proceedings. See

14

Donnelly at 643; Lam v. Kelchner, 304 F.3d 256, 271-72 (3d Cir. 2002). The test is whether the prosecutorial misconduct "so infected the trial with unfairness as to make the resulting conviction a denial of due process." Donnelly at 643. In examining the impact of the alleged prosecutorial misconduct, a court must examine the entire proceeding to determine whether the conviction resulted from a denial of due process. Id.

Here, there was no prosecutorial misconduct as the Commonwealth met the requirements of Pa.R.Crim.P. 573. The petitioner's statements were not written and were made at the time police were attempting to set up negotiations with the petitioner.[6] Trial Transcript (Day 2), 7/19/99, p. 68-77. Furthermore, even if prosecutorial misconduct did occur, the outcome of the trial would have been the same with or without these statements. The testimony revealing the petitioner's statements were merely cumulative evidence to the observations witnesses made that night. The petitioner's Fourteenth Amendment was not violated when a witness testified as to what the petitioner said as he was barricaded in his apartment. Accordingly, the petitioner's request for relief should be denied.

## VII. CONCLUSION

**WHEREFORE**, based upon the foregoing, Respondent requests that the Petition for Writ of Habeas Corpus in the above entitled action be dismissed.

Respectfully submitted,

Michael E. Burns
Assistant District Attorney

Dated: July 20, 2005

---

[6] After shooting the victim, the petitioner barricaded himself in his apartment.

15